low, when the fraud has been perpetrated by Webb alone by means of a ca. sa.? He had no claim upon Seldon and the very object of the bond was to make Seldon liable to Webb for what he had no interest in. Now it is well settled that when a chose in action has been assigned by the owner he shall not be permitted fraudulently to interpose and defeat the right of the assignee. Mandeville v. Welsh, 5 Wheat. [18 U. S.] 277. Courts will not give effect to a dismissal of a suit affected by fraud or a release. "It would be strange (says Judge Story) if parties could be allowed under its forms to defeat the whole purposes of the law." The demurrer admits the assignment, and if Webb could not release the judgment neither could he use the process of the courts to recover of Seldon the money. The fraud would be equally as great; the bond then was the fruit of his fraudulent purpose and he cannot claim it as valid. The ca. sa. here was issued in fraud and was used for an unlawful purpose and is different from the case where the execution was lawfully issued and the party is lawfully imprisoned. In such a case there is neither fraud nor duress. In the case at bar there is both and the plea charges it, and the demurrer admits the facts as pleaded.

The third plea avers that under the insolvent acts there was no authority to take this bond. By the common law the sheriff had no right to take such a bond and it would have been void. The sheriff had no right by the common law to take even a bail bond, and where the statute authorizes him to take a bail bond he must take it as directed by the act, or it will be void and its illegality may be pleaded by the obligor. Hurlstone on Bonds, 9 Law Lib. 63. The insolvent laws which authorize a prison bounds bond to be taken should be construed with equal strictness. By the act of March 3, 1803 [2 Stat. 237], any debtor actually confined in jail at the suit of a creditor may petition for the benefit of the act. The 15th section, provides, that the creditor or his agent shall give security for the prison fees. The 7th section provides, that any creditor may file allegations against the debtor. The act then requires an actual creditor and the creditor alone to be a party to such proceedings. Was, then, Webb a creditor within the meaning of the law? The facts set forth in this plea show that Webb had been paid by Williams and had assigned to him the judgment, and that Williams notified Seldon of the purchase from Webb. He ceased, then, to be a creditor. Seldon was not Webb's debtor under these circumstances, if Seldon had applied to be released by the benefit of the act, could Webb have pled allegations and stopped his discharge? Could he act as a creditor after he had assigned his interest to Williams? Could he then use the process of the court as a creditor and use a bond which he had obtained by fraud from Seldon when he had no interest in the judgment? The plea avers

that Webb assigned the ca. sa. without the authority or consent of Williams, and that it was oppressively exacted and illegally done to defraud Williams and that Webb had no right to imprison Seldon. The imprisonment then is admitted to have been illegal and the bond was extorted from Seldon for his discharge from that illegal imprisonment. The insolvent acts contemplate a case of imprisonment for debt at the suit of a creditor. Here Webb was not a creditor, and he had no right to exact a bond of Seldon. The bond then was oppressively extorted of Seldon under color of right and of the insolvent laws, and is void on that account. It is submitted then that Webb cannot recover on this bond, and that the pleas show a valid defence.

Verdict and judgment for the plaintiff.

WALLER (BIGLER v.). See Case No. 1,-404.

## Case No. 17,108.

### WALLER v. DYER et al.

[5 Cranch, C. C. 571.] [1]

Circuit Court, District of Columbia. Nov. 26. 1839.

MECHANICS' LIENS—TIME OF FILING CLAIM.

No debt for materials furnished for building a house in Washington, Alexandria, or Georgetown, D. C., will under the act of congress of 2d March, 1833 [4 Stat. 659], remain a lien upon the house for more than two years from the commencement of the building, unless an action for the recovery of the debt be instituted, or the claim filed within three months after furnishing the materials, &c.

Bill in equity to compel the execution of a trust. The question submitted to the court, upon a case stated was, whether the complainant, who furnished materials for a dwelling house, built by Nathan Smith, who had conveyed it in trust to Dyer and Blagden, to secure certain debts of Smith, had, on the 29th of October, 1835, any lien upon the building for which the materials were furnished? The case agreed was, that Smith began to build the house before the 25th of October, 1833. That the materials were furnished by the complainant. Waller, before the 1st of August, 1834, and were used in building the house. That on that day. [Abraham B.] Waller came to a settlement of the account of materials furnished, and Smith gave his note to Waller at 90 days, for the amount, ($651.54.) That on the 11th of November, 1834, Waller brought suit upon the note, and at March term, 1836, recovered judgment, but did not file his claim in the clerk's office, nor institute his action for the debt within three months after furnishing the materials. On the 20th of October, 1835, the creditors of Smith, excepting the complainant, and Shepherd and Mudd, who supposed they then had a lien upon the building for

[1] [Reported by Hon. William Cranch, Chief Judge.]

the materials which they had furnished, entered into a written agreement with Smith to give him time until the 1st of November, 1837, upon his giving security by a deed of trust upon all his real estate in the city of Washington. On the 29th of October, 1835, the complainant and Shepherd and Mudd executed the following writing: "Whereas the creditors of Nathan Smith have generally united in an agreement to extend the time of their demands, upon his executing a certain deed of trust, particularly mentioned in the said agreement; and whereas we, the undersigned creditors, have liens upon part of the property of the said Nathan Smith, and are, therefore, not upon the same footing with the other creditors, but are desirous to make the same extension of credit that they have: Now we do agree to forbear any coercion of our several demands upon him for the term of two years from the first day of November next, provided that the said Nathan Smith shall and do first execute his deed of trust according to the terms of the agreement hereinbefore referred to; and provided also, that his other creditors shall agree to the like extension, so that we shall not lose any priority of lien, whether under the lien law, or otherwise, which we now may have." On the 31st of October, 1835, Smith executed the deed of trust to the defendants Dyer and Blagden, reciting the names of his creditors, and the amount due to each, and among the rest, "to Abraham B. Waller, in the sum of .$651.54. And whereas also the said Shepherd and Mudd and Abraham B. Waller have executed and delivered to the said Nathan Smith, an instrument of writing, dated on the 29th day of October, 1835, making the same extension of credit given in the first-named instrument of writing, dated on the 20th day of October, 1835, and on the same conditions, but reserving any priority of lien, whether under the act of congress aforesaid, or otherwise, which they, the said Shepherd and Mudd and Abraham B. Waller, might have on the said 29th day of October, 1835, and whereas also," &c. "Provided, however, that nothing herein contained shall be construed to impair the legal priorities of lien hereinbefore mentioned as belonging to the Patriotic Bank, and to Shepherd and Mudd, or which belongs to Abraham B. Waller."

The act of congress of the 2d of March, 1833 (4 Stat. 659), entitled "An act to secure to mechanics and others, payment for labor done, and materials furnished in the erection of buildings in the District of Columbia," after giving a lien, &c., provides: "That no such debt for work and materials, shall remain a lien on the said house or other buildings, longer than two years from the commencement of the building thereof, unless an action for the recovery of the same be instituted, or the claim filed, within three months after performing the work, or furnishing the materials, in the office of the clerk of the court for the county in which the building shall be situated."

It was agreed by the counsel for the parties respectively, that if the court should be of opinion that the complainant had such a lien on the 29th of October, 1835, then a decree should be rendered against the trustees for the amount of the note. If otherwise, then the decree should be for an equal dividend with the other creditors.

Mr. Bradley, for plaintiff.
R. J. Brent and Mr. Hellen, for defendants.

THE COURT was of opinion that the complainant had no lien on the 29th of October, 1835, as the two years expired on the 25th.

---

## Case No. 17,109.
### WALLER v. STEWART.
[4 Cranch, C. C. 532.] [1]

Circuit Court, District of Columbia. March Term, 1835.

PRACTICE—INSPECTION OF BOOKS—COMPETENCY OF WITNESS.

1. It is not too late, after the jury is sworn, to call for the books which the court has ordered to be produced at the trial. If the party calling for the books inspect them, he makes them evidence for the other party.
[Cited in Edison Electric Light Co. v. United States Electric Lighting Co., 45 Fed. 59.]

2. If the witness is protected from liability by the act of limitations, he is a competent witness without a release from the party to whom he was liable.

Assumpsit for $116.30, for lumber sold and delivered. The defendant [Stewart's executrix] had obtained an order of the court upon the plaintiff, to produce, upon the trial, his original book of entries. After the jury was sworn the defendant called for the book. The plaintiff's counsel, Mr. Bradley, refused to produce it, although he had it ready, saying that the call was too late after the jury was sworn, and cited Geyger v. Geyger, 2 Dall. [2 U. S. 332] 332.

Mr. Morfit, contra, cited the judiciary act of 1789, § 15 (1 Stat. 73); Blight v. Ashley [Case No. 1,541]; and Kenney v. Vanhorne, 1 Johns. 394.

THE COURT (nem. con.) was of opinion that the motion for non pros. for not producing the book, was not too late. The book was then produced.

Mr. Bradley then gave notice to the defendant's counsel that if they inspected the books he should claim the right to use them as evidence for the plaintiff, and cited Jordan v. Wilkins [Case No. 7,526].

THE COURT (CRANCH, Chief Judge, and MORSELL, Circuit Judge, hesitating, and thinking there were contrary decisions on the point) decided that if the defendant's counsel inspected the book he made it evidence for the plaintiff.

Mr. Morfit then refused to inspect it.

Mr. Peter Kurtz was then offered as a witness for the plaintiff, and was about to testify

1 [Reported by Hon. William Cranch, Chief Judge.]